1

2  **THE HONORABLE JOHN CHUN**

3

4

5

6

7  **IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

|  |  |
|---|---|
| ~~ASHLEY COOK~~ASHLEY COOK, JOSHUA BURDI, ETHAN CORRIERE, MICHELLE GRISSOM, JOHNATHAN HODNEFIELD, ERICA HOLLAND, CATARINA LY, DAVID OTTENWELLER, and AMY ROOKER, individually and on behalf all others similarly situated, | No. 2:25-cv-00050-JHC |
|  | **SECOND** AMENDED CLASS ACTION COMPLAINT |
|  | **JURY DEMAND** |
| Plaintiffs, |  |
| v. |  |
| AMAZON SERVICES.COM LLC, |  |
| Defendant. |  |

**SECOND AMENDED CLASS ACTION COMPLAINT**

~~Plaintiff~~Plaintiffs Ashley Cook ~~("Plaintiff,~~ Joshua Burdi, Ethan Corriere, Michelle Grissom, Johnathan Hodnefield, Erica Holland, Catarina Ly, David Ottenweller, and Amy Rooker, (collectively as "Plaintiffs") bring this action, on behalf of ~~herself~~themselves and all others similarly situated~~,~~ ("Class Members"), against Defendant Amazon Services.com LLC ("Amazon" or "Defendant"). ~~Plaintiff seeks~~Plaintiffs seek to obtain ~~her~~their own monetary

~~CLASS ACTION~~SECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

damages, restitution and reinstatement for ~~her~~their employment, and declaratory and injunctive relief, and any other form of relief under the law, for a class of individuals ("Class" or "Class Members") who are similarly situated and who have ~~applied for~~ illegally been denied reasonable accommodations at Amazon~~. Plaintiff makes the following allegations upon information and belief, except as~~, or who have been constructively or actually terminated for seeking to ~~her own actions, the investigation of her counsel, and the facts that are a matter of public record.~~use reasonable accommodations.

Plaintiffs make the following allegations upon information and belief, except as to their own actions, their own experiences, the investigation by their counsel, and the facts that are a matter of public record.

## I.  NATURE OF THE ACTION

1.  This case is about Amazon's centralized corporate policies that result in systematic disability discrimination and a ~~blatant~~deliberate failure to accommodate ~~an employee~~employees, a story representative of tens of thousands of ~~people at~~ current and former employees of Amazon.

2.  Amazon knows that its policies unfairly harm disabled employees, but, nevertheless, demands strict adherence to the discriminatory policies, and continues to enforce the policies to protect its bottom line and reinforce its rigid, antiquated, and robotic corporate mandates related to reasonable accommodations.

3.  Amazon is required to comply with the Americans with Disabilities Act ("ADA") and must offer reasonable accommodations unless it would result in an undue hardship.  The bar for showing that a reasonable accommodation would be an undue hardship is very high as an "[u]ndue hardship refers not only to financial difficulty, but to reasonable accommodations that

~~CLASS ACTION~~SECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1    are unduly extensive, substantial, or disruptive, or those that would fundamentally alter the nature

2    or operation of the business." Enforcement Guidance: Reasonable accommodation & Undue

3    Hardship Under the Americans with Disabilities Act No. 915.002, 2002 WL 31994335, at *4

     (Oct. 17, 2002).

4
         4.      Upon information and belief, Amazon reviews approximately 255,000 reasonable

5    accommodation cases per year.

6        5.      Upon information and belief, Amazon relies on Artificial Intelligence ("AI") to

7    read, review, and respond to reasonable accommodation requests.

8        6.      As well, Amazon relies on 'case managers,' individual employees who read,

9    review, and respond to reasonable accommodation requests. Those case managers are routinely

10   changed and do not meaningfully have conversations with any employees about disability

     reasonable accommodation requests. Case managers are not regionalized or localized, and work

11   out of a remote location and operate on a nationalized basis. Stated differently, localized

12   managers almost certainly will never meet the case managers who work on the Plaintiffs cases.

13   More importantly, case managers do not possess independent decision-making authority and

14   must strictly adhere to Amazon's policies.

15       2.7.    Each Plaintiff is a disabled ~~woman. Her~~employee. Their disabilities, however,

16   do not impede ~~her~~their ability to work.   Rather than accommodate ~~her~~, or continue to

17   accommodate them, Defendant has simply pushed ~~her~~each Plaintiff through a maze of red tape

     ~~that has precluded her from working for approximately a year.~~, all while failing to accommodate

18   them, and, ultimately, terminating those who could only work with reasonable accommodations

19   which Amazon refuses to provide.

20       3.8.    The Class Members are putative Plaintiffs who work for Defendant across the

21   country. Defendant requires all employees to utilize Defendant's human resources app to process

22   ~~CLASS ACTION~~SECOND AMENDED COMPLAINT         HARMAN GREEN PC
     2:25-cv-00050-JHC                                824 Exposition Ave., Suite 8
                                                       Dallas, Texas 75226
23

24

requests for reasonable accommodation.  Requests for reasonable accommodation are routinely denied because Defendant does not engage in the interactive process as the app simply is not designed to allow such an interactive process.  Defendant's app is called Amazon A to Z (the "A to Z App").

9.    Within the Class Members are three Sub-Classes.

10.    The First Sub-Class pertains to employees who were not accommodated because of the systematic discrimination arising out of the A to Z App.

11.    This First Sub-Class is defined is defined by the *process* of applying subject to a corporatewide, non-region-specific policy of discrimination.  That policy demands employees submit requests for a reasonable accommodation notto a faulty, rigid, robotic, mechanical system that avoids accommodating them.

12.    The Second Sub-Class pertains to corporate, non-warehouse, employees who have been told they must return to work under a formal, corporate Return to Office policy ("RTO").

13.    The Second Sub-Class is subject to a corporatewide, non-region-specific policy of discrimination.  That policy is one such that prohibits any employees from working remotely regardless of the employee's disability and any reasonable accommodations related to their disabilities and need to work remotely.  Defendant's RTO policy does not allow, by definition, remote work as a reasonable accommodation.

4.14.    Upon information and belief, virtually every single instance of an employee requesting remote work has been denied and, instead, Defendant offers inadequate alternatives, such as 'noise cancelling headphones,' even though, in many instances, these 'alternatives' have not been approved and/or recommended the by whether a person was or was not accommodated.employee's providers.  In many instances, these 'alternatives' can actually be

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

contrary to providers' recommendations for disabled employees' needs.

15.    ~~The A to Z App is~~ Amazon would face no undue hardship by allowing some disabled employees to work remotely.

16.    Finally, the Third Sub-Class pertains to warehouse workers who have been put on short-term disability ("STD") leaves, or otherwise prohibited from returning to work, after they identified themselves as disabled.  In fact, for these workers, one of Defendant's onsite medical providers told a ~~Plaintiff~~ Defendant "regularly denies medical reasonable accommodations as simple as extra breaks or lower scanner rate quotas."

17.    The Third Sub-Class is subject to a corporatewide, non-region-specific policy of discrimination.  Warehouse employees are subject to a policy of discrimination that prevents them from continuing their employment if they request a reasonable accommodation.  Warehouse employees who request reasonable accommodations are placed on STD to avoid Amazon from having to accommodate them.  This Leave of Absence ("LOA") policy covers both warehouse and corporate employees, though, upon information and belief, it predominantly affects warehouse employees.

18.    The LOA policy discriminates against all disabled employees at Amazon, and particularly disabled warehouse employees, by prohibiting them for maintaining meaningful employment, and, instead, merely removing those employees from the workplace to maximize efficiency and profitability.  The LOA as an accommodation should be a 'last resort' and not the immediate response to employees who require reasonable accommodations, as making the LOA the first response evidences discrimination against individuals seeking meaningful employment while disabled.

19.    All three policies are inherently flawed and ~~causes~~ cause a disparate and negative impact ~~against~~ on disabled employees~~, whose~~.

~~CLASS ACTION~~ SECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

5. 20.    The A to Z App results in mechanical delays and denials of reasonable accommodation requests are never discussed without any legitimacy.considering their merits.

21.    Plaintiff allegesAmazon's A to Z App results in systematic disability discrimination.

6. 22.    Plaintiffs allege, for the Class, that Defendant either underfunds orand has not sufficiently supported the internalcentralized mechanisms for employees who request reasonable accommodations.  The Class is not defined by a particular disability, but, rather, by Defendant's internalcentralized corporate policies governing the handling of disability claims, requiring the use of the A to Z App and LOA for reasonable accommodations.

23.    This As well, Amazon routinely constructively terminates employees who are unable to work without a reasonable accommodation, even if those employees can perform their essential job functions with or without reasonable accommodations.

7. 24.    The First Sub-Class, then, is not defined by whether ana reasonable accommodation was granted, but contains an overriding, predominate question of whether Defendant's policy, of havingforcing employees rely on the A to Z App for disability reasonable accommodation requests, complies with the law, or whether the difficulty in utilizing the app creates illegal disability discrimination.

25.    The Second Sub-Class, then, is not defined by whether a reasonable accommodation was granted, but contains an overriding, predominate question of whether Defendant's policy, of demanding all employee Return to Office, and of offering no ability for any disabled employee to work remotely as a reasonable accommodation, complies with the law, or whether the policy creates illegal disability discrimination.

26.    The Third Sub-Class, then, is not defined by whether a reasonable accommodation was granted, but contains an overriding, predominate question of whether Defendant's policy to

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1  put employees on STD and LOA, rather than accommodate them, complies with the law, or

2  whether the policy creates illegal disability discrimination.

3  **II.  PARTIES**

4  27.    Plaintiff Cook was and is a resident of Texas~~.~~, and timely filed with the Equal

Employment Opportunity Commission ("EEOC"), Charge No. 551-2025-00235.  Plaintiff Cook

5  timely filed her claims after receiving a Right to Sue Letter.

6  28.    Plaintiff Joshua Burdi was and is a resident of Arizona, and timely filed with the

7  EEOC, Charge No. 540-2026-00098.  Plaintiff Burdi is awaiting a Right to Sue letter, which,

8  potentially, has been delayed as a result of the 2025 federal government shutdown.

9  29.    Plaintiff Ethan Corriere was a resident of Nevada and currently is a resident of

Texas, and timely filed with the EEOC, Charge No. 487-2025-00384.  Plaintiff Corriere received

10  a Right to Sue letter on September 9, 2025.

11  30.    Plaintiff Michelle Grissom was and is a resident of Texas, and timely filed with

12  the EEOC, Charge No. 450-2025-09043.  Plaintiff Grissom is awaiting a Right to Sue letter,

13  which, potentially, has been delayed as a result of the 2025 federal government shutdown.

14  31.    Plaintiff Johnathan Hodnefield was and is a resident of Washington, and timely

15  filed with the EEOC, Charge No. 551-2026-00111.  Plaintiff Hodnefield is awaiting a Right to

16  Sue letter, which, potentially, has been delayed as a result of the 2025 federal government

17  shutdown.

18  32.    Plaintiff Erica Holland was and is a resident of Nevada, and timely filed with the

EEOC, Charge No. 487-2025-03581.  Plaintiff Holland is awaiting a Right to Sue letter, which,

19  potentially, has been delayed as a result of the 2025 federal government shutdown.

20  33.    Plaintiff Catarina Ly was and is a resident of Washington, and timely filed with

21  the EEOC, Charge No. 551-2026-00110.  Plaintiff Ly is awaiting a Right to Sue letter, which,

22  ~~CLASS ACTION~~SECOND AMENDED COMPLAINT

2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

23

24

potentially, has been delayed as a result of the 2025 federal government shutdown.

34.     Plaintiff David Ottenweller[1] was and is a resident of Texas, and timely filed with the EEOC, Charge No. 31C-2024-00634.  Plaintiff Ottenweller received a Right to Sue Letter and timely filed his claims.

35.     Plaintiff Amy Rooker was and is a resident of Texas, and timely filed with the EEOC, Charge No. 451-2025-06226.  Plaintiff Rooker is awaiting a Right to Sue letter, which, potentially, has been delayed as a result of the 2025 federal government shutdown.

8.36.     Plaintiff identified their EEOC charges as "class charges" such that Defendant is on notice about the nature of the class claims.

9.37.     Defendant Amazon Services.com LLC has a principle place of business at 440 Terry Ave N, Seattle, WA 98109, and a registered agent, Corporation Service Company, at 300 Deschutes Way Southwest, Tumwater, WA 98501.

38.     Defendant employs about 1,500,000 employees, is valued in excess of $2,000,000,000,000 and earns approximately $2,000,000,000 per day.

### III.     JURISDICTION AND VENUE

39.     Pursuant to 28 U.S.C. §1331 this Court may properly hear Plaintiff'sPlaintiffs' claims as they arise under a federal statute.

10.40.  Pursuant to 28 U.S.C. §1367 this Court may properly hear Plaintiffs' State law

_____

[1]  Plaintiff Ottenweller has a pending claim in the Northern District of Texas and a pending motion to transfer that action into this case, 3:24-cv-03077-E.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

claims as they arise out of the same nucleus of operative fact so as to create the same case or controversy.

~~11.~~41.  The Court has general personal jurisdiction over Defendant because, personally or through its agents, Defendant operates, conducts, engages in, or carries on a business or business venture in Washington; it is registered with the Secretary of State in Washington as a for-profit corporation; and it maintains its headquarters in Washington.

~~12.~~42.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because it is the district where Defendant resides and has the most significant contacts as the witnesses and facts in this case are disbursed across the country and communication is made primarily via the A to Z App.

43.    As well, this controversy arises out of centralized corporate mandates and policies that affect all employees, and does not affect employees in only a regionalized or localized manner.

## IV.    STATEMENT OF FACTS

### A.   —First Sub-Class, Corporate A to Z App

44.    Defendant employed Class Members.

45.    Class members are disabled.

46.    Class members sought a reasonable accommodation from Amazon.

47.    Class Members were required to rely on the A to Z App, managed by the Disability and Leave Services ("DLS") department.

48.    Use of the A to Z App results in routine technical failures.  These routine technical failures mean that the requests for reasonable accommodation cannot be processed

~~CLASS ACTION~~SECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

or are significantly delayed.

49.    Amazon also has a "MyHR" portal that employees must rely on for human resources functions.

50.    The MyHR portal operates as a corporatewide, non-regional system in the same manner as the A to Z App, but also shows employees items such as their remaining vacation time or unpaid time off.

51.    The vast majority of Class Members were not accommodated.

52.    If a Class Member was accommodated, it took an unreasonable amount of time for that reasonable accommodation to be approved.

53.    Class Members would routinely have to resubmit medical information through the A to Z App because Amazon failed to properly hold or manage that medical information.

54.    Class Members would routinely have to resubmit medical information through the A to Z App because Amazon failed to properly hold or manage that medical information, this caused significant, unreasonable delays in their approval for reasonable accommodations, if any approval was even generated.

55.    The failure to provide a reasonable accommodation in a reasonable and timely manner is both discrimination and evidence of a broader system of discrimination.

56.    As well, Amazon routinely demands that employees seeking reasonable accommodations through the A to Z App be placed on a medical leave, rather than be accommodated.

57.    This Sub-Class is defined by those Class Members subjected to using the A to

1    Z App for their reasonable accommodation requests.

2        **_B.  Second Sub-Class, Corporate RTO_**

3        58.    In September 2024, Amazon created a new corporate policy that all corporate

4    employees must 'return to office,' the Return to Office policy identified above.

5        59.    The policy still controls through today and all employees are subject to the

6    illegal mandate.

7        60.    The RTO policy is inherently flawed and discriminatory.

8        61.    Upon information and belief, the RTO policy does not allow any employee

9    reasonable accommodation to work remotely on a permanent basis.

10       62.    In practice, no employee is allowed to work remotely, even absent a defined

11   policy text stating as much.

12       63.    Even if an employee presents Amazon with an explicit reasonable

13   accommodation request from a medical provider advising that the employee must work

14   remotely, Amazon will not allow that reasonable accommodation.

15       64.    Upon information and belief, Amazon has falsely claimed that each and every

16   corporate employment role must have an essential function to 'work in person' in an office

17   even though, in reality, that is not, and never has been, an essential function of corporate roles.

18       65.    The RTO policy is essentially the same as a policy to require all employees to

19   walk up a flight of stairs before beginning the workday and denying elevator access to a

20   wheelchair bound employee.

21       66.    Amazon's purported basis for the RTO policy is to 'boost collaboration,' but

22   CLASS ACTIONSECOND AMENDED COMPLAINT

23   2:25-cv-00050-JHC

24

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1    failing to allow reasonable accommodations to the RTO policy discriminates against

2    employees who must work remotely.

3        67.    Amazon's corporate employees, who are disabled, such as the Plaintiffs

4    identified herein, are then forced to return to the office, without a reasonable accommodation,

5    only to attend virtual team meetings and one-on-one meetings virtually, as many team

6    members, managers, and supervisors are located in other States and cities.

7                    *C.  Third Sub-Class, Warehouse*

8        68.    Amazon employees Class Members in warehouses, in roles that, by their very

9    nature, are 'in person.'

10       69.    However, simply because an employee works in a warehouse does not mean

11   that they cannot perform their work if they require a reasonable accommodation.

12       70.    Amazon routinely prevents disabled warehouse employees from meaningful

13   employment.

14       71.    If a warehouse employee identifies themselves as disabled, very often they are

15   required to take a LOA and cannot perform work in the fashion as prior to their identification

16   as disabled.

17       72.    Upon information and belief, Amazon maintains its own Short-Term

18   Disability leave policy, administered through DLS, and relies on this STD policy to remove

19   disabled employees from warehouse floors.

20       73.    Amazon would prefer to maximize performance and profit than allow disabled

21   employees meaningful opportunities to be employed with a reasonable accommodation.

22   ~~CLASS ACTION~~SECOND AMENDED COMPLAINT          HARMAN GREEN PC
                                                      824 Exposition Ave., Suite 8
23   2:25-cv-00050-JHC                                   Dallas, Texas 75226

24

1    74.    Amazon accomplishes this through the LOA policy.

2    75.    Amazon shelves disabled warehouse employees and places them on STD and

3    LOA rather than accommodate them.

4    *D.  General Facts common to all Plaintiffs*

5    76.    Defendant employed Plaintiffs.

6    77.    Plaintiffs were all qualified for their employment.

7    78.    Plaintiffs show, by and through their individual facts, that they were qualified

8    based on the longevity of their employment and their performance bonuses, promotions, or

9    other forms of approval.

10    79.    Plaintiffs are all disabled.

11    80.    Each Plaintiff identifies a disability that impairs major life functions.

12    81.    For many years, since the start of the COVID-19 Pandemic, all Corporate

13    Plaintiffs, in the First and Second Sub-Classes, had been working remotely.

14    82.    All Corporate Plaintiffs, in the First and Second Sub-Classes, sought to

15    continue to work remotely as a reasonable accommodation as Defendant began to encourage

16    employees to return to the office full time.

17    83.    Defendant, first as a matter of practice and, now, as a matter of formal policy,

18    does not permit employees to work remotely as a reasonable accommodation.

19    84.    Defendant has a policy demanding all employees work in person for 'company

20    culture.'

21    85.    Even if a Plaintiff can and did show Defendant that their medical provider

22    CLASS ACTIONSECOND AMENDED COMPLAINT

23    2:25-cv-00050-JHC

24

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

recommended against working in person, Defendant refused to accommodate that Plaintiff with a remote work reasonable accommodation.

86.    If a reasonable accommodation is denied, Defendant does not allow for appeals.

87.    If a Plaintiff does not accept an offered reasonable accommodation, Defendant treats it as a 'preferential denial' even if the employee states that the offered reasonable accommodation is inadequate.

88.    Defendant does not entertain a dialogue about whether a remote work reasonable accommodation is appropriate for a Plaintiff because Defendant simply will not allow any employee to work remotely.

89.    Defendant terminates many employees who are unable to work without a reasonable accommodation.

90.    As well, through denials of reasonable accommodations, some employees are compelled to abandon their employment simply because it is impossible for them to remote into the office in person.

### *E.  Plaintiff Cook – First and Third Sub-Class*

91.    Plaintiff Cook is a disabled veteran with both physical and non-physical disabilities.

92.    Plaintiff Cook began her employment with Amazon in June 2022.

93.    After approximately a year of employment, June 2023, Plaintiff Cook began to experience excessive bleeding, due to uterine fibroid problems, that would require her

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1    attention at work to be taken for short periods of time.

2        94.    Plaintiff Cook also suffers from Post Traumatic Stress Disorder ("PTSD").

3        95.    Plaintiff Cook initially requested reasonable accommodations from her

4    manager in the form of remote work from home time and, as well, fifteen minute breaks

5    throughout the day to manager her bleeding.

6        96.    Plaintiff'sPlaintiff Cook's manager refused to engage in the conversation,

7    saying she must go through the corporate A to Z App, which manages all employees' HR

8    concerns.

9        97.    Plaintiff Cook did go through that HR appA to Z App.

10        98.    Initially, Plaintiff Cook was relieved that Amazon was giving her an

11    opportunity to monitor her health, as she was given an approved medical leave towards the

12    end of 2023.

13        99.    Plaintiff'sPlaintiff Cook's leave was then extended over her objection. She was

14    subject to the LOA policy.

15        100.   Plaintiff Cook was told by a case manager that her reasonable accommodations

16    "will probably be denied."

17        101.   Plaintiff Cook was able to return to work and wanted to return to work, but

18    was denied the ability to do so.

19        102.   Plaintiff Cook was told, by that same case manager, that she should try to ask

20    for a position change and that she should discuss a new position with her manager.

21        103.   Plaintiff'sPlaintiff Cook's manager only referred her back to HR and the A to

22    CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

23

24

1    Z App.

2        104.    This happened again and again.

3        105.    Plaintiff Cook was slated to remain on that leave through January 17, 2025.

4        106.    Plaintiff Cook now is in limbo, explained further below, unsure whether she

5    should return to work remotely, or whether she is going to be reassigned to another position

6    and/or another department.

7        107.    Plaintiff Cook has not been able to return to her position as Cloud Engineer

8    due to Amazon not approving reasonable accommodations and was told by her management

9    (M. Santhankrishnan and D. Pereida) that they could not honor or approve reasonable

10    accommodations without approval through the A to Z App.

11        108.    This is a common problem with Defendant: employees are asked to pursue

12    reasonable accommodations through the A to Z App, and employees cannot meaningfully

13    explain their disabilities or engage with Defendant about what reasonable accommodations

14    are necessary.  As well, DefendantsDefendant consistently havehas multiple case managers

15    assigned and reassigned to cases, causing confusion for the case managers and employees.

16        109.    After being out on leave for months, Plaintiff Cook informed Defendant that

17    she was suffering from undue stress because she was out of work and not being paid.

18        110.    Plaintiff'sPlaintiff Cook's medical providers informed her that they believe she

19    is being discriminated against.

20        111.    Plaintiff'sPlaintiff Cook's medical providers specifically informed Defendant,

21    on September 13, 2024, that her continued leave was negatively affecting her mental health,

22    CLASS ACTIONSECOND AMENDED COMPLAINT                HARMAN GREEN PC
      2:25-cv-00050-JHC                                   824 Exposition Ave., Suite 8
                                                          Dallas, Texas 75226

23

24

stating "the way she has been reacting to the interactions between herself AWS, her medical leave, and short-term disability leave has exacerbated her symptoms requiring extended treatment and modification of prescription medications." ~~Plaintiff's~~Plaintiff Cook's expected return to work date was December 30, 2024.

112.    Plaintiff Cook has been pushed into a never ~~-~~ending cycle of disability leave pigeonholing her, as Amazon uses the A to Z App to stifle and hide disabled employees.

113.    ~~Plaintiff's~~Plaintiff Cook's mental health deteriorated rapidly because of Defendant's ~~completed~~complete and utter failure to provide any kind of ~~an~~a reasonable accommodation.

114.    ~~Plaintiff's~~Plaintiff Cook's story is representative of a class of claims.

115.    Many employees share the story that Amazon refuses to engage in the interactive process via managers, and, instead, demands employees engage through the A to Z App, where their reasonable accommodation requests are never discussed with any legitimacy.

116.    Congress has taken notice that the A to Z App fosters an illegal work environment that disproportionately affects disabled employees. [2]

---

[2]  United States Senate Committee on Health, Education, Labor, and Pensions, Chairman Bernard Sanders, THE "INJURY-PRODUCTIVITY TRADE-OFF": HOW AMAZON'S OBSESSION WITH SPEED CREATES UNIQUELY DANGEROUS WAREHOUSES, Majority Staff Report, December 2024.

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1     117.    The Disability Leave Services (DLS) department utilizes the A to Z App and

2   "Although workers are supposed to be assigned a caseworker, many workers reported that

3   they were either not given one or could not reach anyone at DLS."[3]

4     118.    The same is true for Plaintiff Cook as her requests to return to work were

5   ignored.

6     119.    Plaintiff Cook, for months, had her paperwork juggled through the A to Z App

7   entirely to her detriment.

8     120.    Repeatedly, Plaintiff Cook went through cycles of being told that her disability

9   reasonable accommodation paperwork was being processed, only for that same paperwork to

10  become 'lost' in the A to Z App, and another HR person would, again, ask Plaintiff Cook to

11  submit her paperwork.

12     121.    Despite Plaintiff Cook being on a medical leave for months, she was told, on

13  or about March 29, 2024, April 5, 2024, June 12, 2024, August 13, 2024, and September 19,

14  2024 that her medical paperwork was 'insufficient' despite Plaintiff Cook uploading

15  everything to the A to Z App.

16     122.    On these occasions, and others, Defendant treated Plaintiff Cook as being on

17  leave without proper medical authorization.

18

19

20

21

[3] *Id.*

22  CLASS ACTIONSECOND AMENDED COMPLAINT          HARMAN GREEN PC
    2:25-cv-00050-JHC                              824 Exposition Ave., Suite 8
23                                                 Dallas, Texas 75226

24

123.    Plaintiff Cook was told that she would have to return to work without any reasonable accommodations whatsoever.

124.    On many occasions, Defendant failed to properly consider Plaintiff'sPlaintiff Cook's medical documentation because it preferred to rely on athe faulty A to Z App application than on an actual case manager to support Plaintiff Cook.

125.    Plaintiff Cook remedied every instance of the A to Z App's failure by providing, once again, all the necessary medical paperwork sought, and Defendant placed Plaintiff Cook back on medical leaves.

126.    Plaintiff'sPlaintiff Cook's providers had asked that she return to work, work with occasional fifteen minute breaks, and to work from homeremotely, but all requests have been ignored by Amazon, who continues to stuff Plaintiff Cook into a forced disability leave without any engagement in the interactive process.

127.    Plaintiff'sPlaintiff Cook's constant denials and fruitless back and forth throughfutile engagement with the A to Z App has caused her extreme stress and has seriously impaired her ability to maintain a reliable income.

128.    On or about February 7, 2025, Plaintiff Cook had a meeting with her manager.

129.    Her manager expressed that there were 'some emails' going back and forth about Plaintiff'sPlaintiff Cook's reasonable accommodation and that they were 'pretty sure' the reasonable accommodation requests had been denied.

130.    That manager then asked whether Plaintiff Cook had been notified; she had not been.

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

131.    ~~Plaintiff's~~Plaintiff Cook's manager then explicitly expressed that ~~Plaintiff's~~Plaintiff Cook's job absolutely could be accommodated and she could work remotely without issue.

132.    In fact, evidencing that Defendant had not had any substantive conversation with anyone about Plaintiff Cook, her reasonable accommodations, and her work responsibilities, ~~Plaintiff's~~Plaintiff Cook's manager stated that if she does not get any reasonable accommodations, he will 'fight for her' so that she can work and be accommodated.

133.    Approximately eleven days later, Plaintiff Cook still had no formal notification about whether her reasonable accommodations were approved and whether she could/should return to work.

134.    Instead, when she tried to log into the A to Z App portal, she was presented with this message:



135.

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

136.    A 503 error page most often represents that a system is down for maintenance or is unavailable because of excessive usage.

137.    Defendant, arguably the largest corporation in the world, spends sufficient funds to keep their marketplace active 24/7 (Amazon.com), but not their application for employees to seek reasonable accommodations at work.

138.    Despite Plaintiff Cook, her doctors, and her managers all agreeing that she should return to work with reasonable accommodations, Defendant did not allow her to return to work, and would not accommodate her, based on conversations behind closed doors locked in an application that Plaintiff Cook cannot even access.

139.    Plaintiff Cook was approved for leave for the period 5-24-2024 through 12-29-2024 over her objection and request to return to work.

140.    In efforts to return to work, Plaintiff Cook also requested job changes as a request for ana reasonable accommodation.

141.    Through Amazon's continued confusion, Plaintiff Cook has been approved to work in another role, and has had that same approval withdrawn.

142.    Plaintiff Cook is currently on leave, and her provider's analysis is that Defendant's failure to accommodate her has significantly and negatively impacted her health.

### F. Joshua Burdi – First and Second Sub-Class

143.    Mr. Burdi is an employee located in Office AZA7 - 1665 West Alameda Drive Suite 125, Tempe, Az 85282 as a Programmer Analyst II (Programmer/Analyst II) and has been employed by Amazon for over five years.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1    144.    Mr. Burdi has ADHD, which impairs his ability to focus on singular tasks, and

2    is regularly regarded as an impairment to many major life functions.

3    145.    Because of his ADHD, Mr. Burdi can become distracted by crowded areas,

4    and struggles to maintain the same level of productivity at work in person than remotely.

5    146.    Stated differently, being around many people with a high volume of

6    overlapping sights and sounds can prevent him from accomplishing all of his work in the most

7    efficient manner.

8    147.    Mr. Burdi has had a remote work reasonable accommodation since the

9    COVID-19 pandemic started in 2020.

10    148.    On April 3, 2023, Plaintiff Burdi requested a Work-From-Home (WFH)

11    reasonable accommodation, explaining that working remotely during COVID had proven to

12    be highly beneficial for productivity.

13    149.    On April 4, 2023, Gayle Jackson was assigned to the case and requested

14    documentation from Plaintiff Burdi's doctor.

15    150.    On April 14, 2023, Plaintiff Burdi provided the requested documents

16    completed by both himself and his doctor.

17    151.    On April 18, 2023, Plaintiff Burdi was asked to provide 'alternative' options

18    to working remotely that could potentially be performed in the office.

19    152.    On April 28, 2023, Plaintiff Burdi's remote work reasonable accommodation

20    was approved indefinitely by Manager Joshua Garrison and relevant stakeholders as an 'off

21    the record' reasonable accommodation.

22    CLASS ACTIONSECOND AMENDED COMPLAINT

    2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

23

24

153.    This approval was generated outside of the A to Z App.

154.    This approval also shows that it was not an essential function of Plaintiff Burdi's job that he report in person.

155.    On May 26, 2023, Plaintiff Burdi was officially diagnosed with all three types of ADHD.

156.    On December 14, 2023, DLS opened a new case stating that Plaintiff Burdi had requested a new reasonable accommodation.

157.    Eric Vaughan was assigned as Case Manager.

158.    Plaintiff Burdi did not, in fact, request a new reasonable accommodation.

159.    From December 14, 2023 – January 8, 2024, Plaintiff Burdi engaged in multiple calls with Eric Vaughan.

160.    During one of the calls, Plaintiff Burdi asked what would happen if the alternate reasonable accommodations did not work and whether remote work would remain an option.

161.    Plaintiff Burdi was informed that if those reasonable accommodations failed, DLS would most likely place Plaintiff Burdi on unpaid Leave of Absence (LOA) and reassign Plaintiff Burdi to a different team.

162.    On January 8, 2024, Plaintiff Burdi sent updated doctor's notes to Eric Vaughan at DLS.

163.    On February 14, 2024 – Alternate in-office reasonable accommodations were approved indefinitely.  Plaintiff Burdi did not request alternate in-office reasonable

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

accommodations, and they were merely thrust upon him as a take-it-or-leave-it option.  It was clear that Amazon was not going to allow Plaintiff Burdi to work remotely.

164.    From February 14 – March 14, 2024, Plaintiff Burdi attempted to work in the office several times; however, the reasonable accommodations were not in place. There was no chair setup, and no way to adjust the temperature in the office.

165.    On March 14, 2024, as alternate reasonable accommodations were still not ready, Plaintiff Burdi was again approved to work remotely until the office setup was complete.

166.    Stated differently, it was not an essential function of his job for Plaintiff Burdi to work in person.

167.    On April 30, 2024, Plaintiff Burdi received updated approval from DLS stating that 'office reasonable accommodations' were ready.

168.    When attempting to return to the office that day, Plaintiff Burdi was offered a shared office with another associate.

169.    Plaintiff Burdi pointed out to Antonio from HR that this did not constitute a private office as required by the approved reasonable accommodation.

170.    In an email thread, HR representative Darby Price stated they could not provide a private office due to space constraints.

171.    Paula Shepard responded, asking whether Plaintiff Burdi could continue to work remotely under those circumstances.

172.    Ms. Price sought additional information on how the original approval was

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

granted.

173.     John Bashaar responded that only a double-occupancy office could be offered and that the original WFH approval should not have been granted, explaining that the reassessment was intended to ensure compliance with RTO guidance.

174.     On May 1, 2024, Plaintiff Burdi had a conversation with Antonio via Chime, during which Plaintiff Burdi was informed again that if the reasonable accommodations did not work, an unpaid LOA and reassignment would likely follow.

175.     After questioning the morality, ethics, and legality of this situation, Plaintiff Burdi did not have any choice but to use the double-occupancy office solely to preserve his ability to have meaningful employment.

176.     Shortly thereafter, Plaintiff Burdi indicated intent to seek legal counsel.

177.     On May 2, 2024, Plaintiff Burdi responded to the email thread, explaining that acceptance of the reasonable accommodations occurred only because Plaintiff Burdi felt threatened and coerced—facing a choice between subpar reasonable accommodations or the risk of unpaid LOA and financial hardship.

178.     Plaintiff Burdi reiterated the intent to seek legal counsel.

179.     On May 6, 2024, Plaintiff Burdi received an email stating that Amazon Legal was reviewing the situation and that Plaintiff Burdi should continue to work remotely until a decision was made.

180.     Around this time, Paula Shepard became the new case manager.

181.     From May 6 – May 15, 2024, Plaintiff Burdi had a call with Paula Shepard,

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1    explained all prior events, and was informed that WFH remained a valid option.

2        182.    Ms. Shepard stated she would work to ensure that arrangement continued.

3        183.    On May 15, 2024, Plaintiff Burdi received an email stating that in-office

4    reasonable accommodations were again approved.

5        184.    However, this was sent only to stakeholders and to Plaintiff Burdi's personal

6    email (rarely checked), not the work email used for most prior communications. Plaintiff

7    Burdi did not see the message at the time.

8        185.    From May 15, 2024 – March 14, 2025, Plaintiff Burdi continued to work

9    remotely, as the last received communication indicated that WFH should continue until Legal

10   provided further instruction.

11       186.    Plaintiff Burdi's MyHR portal still listed WFH as the approved reasonable

12   accommodation.

13       187.    On March 14, 2025, HR representative Darby Price called to ask why Plaintiff

14   Burdi had not returned to the office.

15       188.    Plaintiff Burdi responded that MyHR still showed WFH approval and that the

16   last instruction received was to continue until Legal decided otherwise.

17       189.    Ms. Darby then informed Plaintiff Burdi of the prior email that had gone only

18   to the personal account.

19       190.    Plaintiff Burdi responded by email, stating that this new reasonable

20   accommodation had never been agreed to.

21       191.    On March 17, 2025, Amanda Magana became the new case manager and

22   CLASS ACTIONSECOND AMENDED COMPLAINT

23   2:25-cv-00050-JHC

24

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1    replied to the email thread.

2        192.    From March 18 – March 25, 2025, Plaintiff Burdi had a call with Ms. Magana,

3    explaining everything that had transpired. Amanda stated she wanted to rebuild the reasonable

4    accommodation from scratch since the prior case had become disorganized due to the repeated

5    back-and-forth.

6        193.    On March 25, 2025, Plaintiff Burdi submitted a new reasonable

7    accommodation request in MyHR, again requesting to work remotely.

8        194.    On April 22, 2025, Plaintiff Burdi was told to attempt in-office work, with

9    permission for Plaintiff Burdi to continue working remotely until all in-office reasonable

10    accommodations were in place.

11        195.    On June 16, 2025, Ms. Magana emailed a ramp-back plan, confirming that in-

12    office reasonable accommodations were ready.

13        196.    The ramp-back plan consisted of three weeks at zero days in office, followed

14    by three weeks at one day, and so on, until full RTO was achieved.

15        197.    On July 29, 2025, Plaintiff Burdi responded to the reasonable accommodation

16    approval email, stating that the reasonable accommodations were not working.

17        198.    The private office still had excessive noise, causing loss of focus and

18    concentration, and the fan provided for temperature control only circulated hot air.

19        199.    At this point, Plaintiff's medical providers had only supported him working

20    remotely, and did not approve or recommend Plaintiff Burdi to work in an office with any

21    reasonable accommodations.

22    ~~CLASS ACTION~~SECOND AMENDED COMPLAINT            HARMAN GREEN PC
      2:25-cv-00050-JHC                                   824 Exposition Ave., Suite 8
23                                                        Dallas, Texas 75226

24

200.   On August 12, 2025, Plaintiff Burdi replied again, reiterating the same concerns and ensuring that Amanda was directly included in the email thread, as no response had yet been received.

201.   On August 19, 2025, still having received no reply, Plaintiff Burdi followed up again with similar information, this time including Manager Danielle and Senior HRBP Tracye in the thread.

202.   On August 20, 2025, Plaintiff Burdi received an automated email from DLS asking about the status of reasonable accommodations and responded with the same information in an effort to prompt further action.

203.   To this day, Plaintiff Burdi continues to work without any form of a reasonable accommodation.

204.   Plaintiff Burdi's essential job functions do not require that he work at an office in person, as evidenced by his many years of working remotely.

205.   As well, Plaintiff Burdi is, and has always been, qualified for his role, as evidence by his many years of continued, successful employment.

### G.  Plaintiff Corriere – First and Third Sub-Classes

206.   In June 2022, Plaintiff Corriere was hired as an Amazon Dedicated Cloud ("ADC") Engineer, working as a dedicated cloud-based employee on top-secret government projects.

207.   Plaintiff Corriere has a military background which forms the basis for his disability, PTSD.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

208.    Plaintiff Corriere served in Iraq and Afghanistan, and his PTSD is considered "100% permanent" and a qualified disability.

209.    At all times, Defendant considered Plaintiff Corriere disabled as Plaintiff Corriere submitted documentation from his medical provider indicating he had PTSD and, as a result, the provider recommended that he limit his time in noisy environments, high foot traffic areas, and spontaneous social interactions.

210.    Originally, Mr. Corriere was hired to work remotely.

211.    In February 2023, he returned to the office for three days a week.

212.    By June 2023, he transitioned to an Amazon Web Services Managed Operations role as a systems engineer, which was not classified as top secret.

213.    In October 2023, Plaintiff Corriere requested to work from remote full-time due to PTSD.

214.    Case manager Lin Nicely responded that "I understand that you are asking about remote work, which is not something that a case manager can assist you with. We are specialist in taking a leave of absence."

215.    Mr. Corriere even stated, specifically, "I am not looking for any leave of absence at the moment" and wanted meaningful, remote, employment.

216.    Ms. Nicely responded that "I would recommend speaking to MyHR."

217.    At that time, Plaintiff Corriere was on a hybrid work schedule but sought a full-time remote reasonable accommodation.

218.    Stated differently, it was not an essential function of his job for Plaintiff

Corriere to work in person.

219.    Many Plaintiffs were hired for remote work and performed their work remotely.  Given that no material change occurred to their job functions, there was no basis to demand on site, in office work requirements.

220.    This request was denied, leading to a prolonged struggle from October 2023 to January 2024 to obtain the necessary reasonable accommodation.

221.    During this period, Plaintiff Corriere was instructed to stop coming to work and to use his PTO.

222.    In December 2023, he was placed on short-term disability in accordance with the LOA policy.

223.    This is, yet again, another instance of Defendant forcing disabled employees onto leaves of absence.

224.    In January 2024, Defendant agreed to a full-time remote work arrangement from November 11, 2023, to November 11, 2024.

225.    In October 2024, he applied for an extension, which was denied.

226.    Throughout this process, he used the A to Z App to manage his reasonable accommodation requests, as required by Defendant Amazon.

227.    Defendant offered noise cancelling headphones as an alternative to working remotely, which was radically insufficient and did not, in any way, accommodate him.

228.    Plaintiff Corriere informed Defendant that the offer was not an appropriate reasonable accommodation extension.

CLASS ACTION SECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1    229.    Plaintiff Corriere's doctor's recommendation was that he work remotely

2    100%.

3    230.    In early November 2024, Plaintiff Corriere was placed on short-term disability

4    again, despite his doctor recommending against any time off work.

5    231.    Despite his doctors responding to Defendant's placing Plaintiff Corriere on

6    short term disability, and again requesting that he tried to get a reasonable accommodation,

7    Defendant claimed to never see that he applied for a reasonable accommodation.

8    232.    Defendant reassigned Plaintiff Corriere while on FMLA to another new team

9    that required in person work and was top secret clearance.

10    233.    Plaintiff Corriere lives in Las Vegas and was assigned to a team in Virginia.

11    Because he could not connect to the servers remotely, he was reassigned for business needs.

12    234.    Defendant had Plaintiff Corriere fill out a reasonable accommodation form and

13    a list of jobs he can do.

14    235.    Defendant responded that he does not meet **any** basic qualifications even

15    though Plaintiff Corriere could do all the jobs listed.

16    236.    Plaintiff Corriere's resume had everything necessary for the qualifications for

17    each role he sought.

18    237.    The only 'problem' with Plaintiff Corriere's applications was that he requested

19    remote work as a reasonable accommodation.

20    238.    Those hiring managers were aware that Plaintiff Corriere had a reasonable

21    accommodation and has listed Plaintiff Corriere's reasonable accommodation request in his

22    CLASS ACTIONSECOND AMENDED COMPLAINT

23    2:25-cv-00050-JHC

24

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1   applications.

2       239.    Plaintiff Corriere was terminated on July 25, 2025, and was only told that he

3   was being terminated because Defendant would not find a way to have him work remotely.

4           ***H.  Plaintiff Grissom – Third Sub-Class***

5       240.    Plaintiff Grissom is a disabled woman who worked as a picker for Defendant.

6       241.    Plaintiff Grissom's job duties included moving, scanning, and managing items

7   in warehouses for proper shipping.

8       242.    On October 23, 2023, Plaintiff Grissom received an email stating eligibility

9   for permanent hire as she had previously been only a seasonal employee.

10      243.    Plaintiff Grissom was then employed as full time Picker.

11      244.    Plaintiff was qualified for her role as evidenced by Defendant observing her

12  performance on a limited work basis and then offering her full-time employment.

13      245.    In late October 2023, Plaintiff Grissom began experiencing seizure-like

14  symptoms and requested the reasonable accommodation of being kept on the first floor.

15      246.    Onsite managers met this request, but stated that all future reasonable

16  accommodations must be approved through MyHR.

17      247.    Plaintiff Grissom also spoke with AmCare, Defendant's onsite medical

18  support for workplace injuries, and management several times regarding the symptoms and

19  used all available PTO to avoid unexcused absences.

20      248.    Plaintiff Grissom experienced seizure activity while working in the first

21  department and went home several times as a result.

22  CLASS ACTIONSECOND AMENDED COMPLAINT

23  2:25-cv-00050-JHC

24

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1

249.    Onsite management and AmCare were notified each time, and Plaintiff

2   Grissom used PTO to cover the missed hours.

3

250.    The symptoms worsened and escalated after Plaintiff Grissom was transferred

4   to the Picker department.

5

251.    Plaintiff Grissom later learned that repeatedly passing under overhead lights

6   at work triggered seizures, as did the stress of constant scanner messages instructing faster

7   work and trying to meet scanner rates as high as 61 items per hour — an unrealistic

8   expectation in a three-level, one-million-square-foot facility like DAL2.

9

252.    On November or December 2023, Plaintiff Grissom was written up for a low

10   scanner rate.

11

253.    After explaining the symptoms and requesting a lower rate, the on-duty

12   manager stated that such write-ups were automatically generated by 'the system.'

13

254.    Plaintiff Grissom was informed that any reasonable accommodations must be

14   approved through MyHR and was required to sign the write-up.

15

255.    Plaintiff Grissom did not receive a physical or digital copy of the write up.

16

256.    On December 19, 2023, Plaintiff Grissom passed out on the work floor during

17   a shift, causing the pick cart to fall on top of her.

18

257.    Another employee caught Plaintiff Grissom's arm to prevent a head injury.

19

258.    Plaintiff Grissom went to AmCare alone, where staff did not call 911, but

20   advised going home after determining she had confusion and weakness.

21

259.    Plaintiff Grissom's husband was called to provide transportation home, and an

22   ~~CLASS ACTION~~SECOND AMENDED COMPLAINT

2:25-cv-00050-JHC

23

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

24

1   she began making efforts to schedule medical appointments.

2   260.   On December 20, 2023, Plaintiff Grissom attended an appointment at

3   Crossover Health, which is Defendant's employee clinic, with Dr. Aveewan Yun, DO, who

4   referred Plaintiff Grissom to a neurologist and recommended reasonable accommodations if

5   she was allowed to continue working.

6   261.   Dr. Yun stated that she did not believe Defendant would approve reasonable

7   accommodations beyond unpaid medical leave, noting that Defendant "regularly denies

8   medical reasonable accommodations as simple as extra breaks or lower scanner rate quotas."

9   262.   Plaintiff Grissom stated a desire to continue working due to financial need, so

10  Dr. Yun submitted a form requesting reasonable accommodations to allow continued work.

11  263.   On December 23, 2023, Defendant received a reasonable accommodations

12  form from Dr. Yun requesting that Plaintiff Grissom avoid bending, squatting, using step

13  ladders or stairs, driving, or operating heavy machinery.

14  264.   On December 24, 2023, Defendant responded with incorrect employee

15  information, referring to Plaintiff Grissom as "Brittney."

16  265.   Plaintiff Grissom notified Defendant of the error and resent the correct form.

17  266.   On December 25, 2023, Plaintiff Grissom received an email stating that the

18  Unpaid Time-Off ("UPT") balance was negative and responded that reasonable

19  accommodations approval was pending.

20  267.   On December 26, 2023, Plaintiff Grissom received an email stating that

21  reasonable accommodations were denied and that DLS would be notified to continue the

22  ~~CLASS ACTION~~SECOND AMENDED COMPLAINT

23  2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

24

leave.

268.     As well, Plaintiff Grisson was denied, by MyHR, a transfer request and was told that no alternative reasonable accommodations were available.

269.     On December 27, 2023, Plaintiff Grissom received an email instructing her to return to work on the next scheduled day after December 21, 2023.

270.     On December 29, 2023, Plaintiff Grissom received and accepted a contingent job offer for permanent hire and completed the online steps.

271.     That night, due to repeated negative UPT emails and pending leave approval, Plaintiff Grissom returned to work out of fear of losing the permanent hire position.

272.     On December 30, 2023, Plaintiff Grissom was informed that medical leave was still active and to remain home until leave approval.

273.     Before leaving, Cole from onsite HR confirmed Plaintiff Grissom's name was on the permanent hire list but stated the hiring process would need to wait until return.

274.     On January 1, 2024, Plaintiff Grissom received another negative UPT email and responded that a leave extension was still pending approval.

275.     On January 2, 2024, Plaintiff Grissom received an email approving leave from December 20 to December 26, 2023, with leave from December 27, 2023, to January 2, 2024, listed as pending.

276.     Plaintiff Grissom was sent another email stating her UPT balance was negative, to which Plaintiff Grissom again responded.

277.     On January 4, 2024, Plaintiff Grissom received another negative UPT balance

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1    email and replied that leave approval was still pending.

2        278.    The same day, an email arrived approving an extension from January 3 to

3    January 17, 2024, stating eligibility only for unpaid medical leave as a reasonable

4    accommodation.

5        279.    Plaintiff Grissom was also asked for medical documentation and resent the

6    reasonable accommodations form while explaining by phone that an appointment with a

7    neurologist was still being scheduled.

8        280.    MyHR extended leave to allow time to find a neurologist.

9        281.    This is yet another example of Amazon's policy of forced LOA.

10        282.    On January 13, 2024, Plaintiff Grissom received an email confirming unpaid

11    leave approval from December 20, 2023, to February 22, 2024.

12        283.    On January 16, 2024, Plaintiff Grissom scheduled a neurologist appointment

13    for February 14, 2024, the earliest available date.

14        284.    On February 14, 2024, neurologist Dr. Kishori Somyreddy diagnosed Plaintiff

15    Grissom with seizures.

16        285.    On February 17, 2024, Plaintiff Grissom received emails approving leave from

17    December 20 to December 28, 2023, and from December 30, 2023, to February 22, 2024.

18        286.    On February 19, 2024, Plaintiff Grissom received two emails stating that leave

19    would end on February 22, 2024, and instructing either return to work or an extension.

20        287.    On February 21, 2024, the neurologist sent Defendant a letter extending leave

21    and confirming the seizure diagnosis.

22    CLASS ACTIONSECOND AMENDED COMPLAINT          HARMAN GREEN PC
                                                    824 Exposition Ave., Suite 8
23    2:25-cv-00050-JHC                             Dallas, Texas 75226

24

288.    Plaintiff Grissom submitted the letter via the AtoZ app.

289.    On February 22, 2024, the leave extension was approved through April 23, 2024.

290.    On April 15, 2024, Plaintiff Grissom had a telehealth appointment with the neurologist, who issued a new letter extending leave to May 28, 2024.

291.    On April 17, 2024, the leave extension was approved through May 28, 2024.

292.    Plaintiff Grissom recalls submitting another progress report toward the end of the leave period, noting no seizures since August 2024 but continued headaches.

293.    MyHR requested another progress report by phone, which Plaintiff Grissom submitted via AtoZ.

294.    The neurologist did not issue a release to return to work but instead requested continued leave until the next appointment.

295.    On May 11, 2024, a new leave extension was approved through August 7, 2024.

296.    In June 2024, Plaintiff Grissom was notified via mail that employer-provided insurance would terminate in mid-July.

297.    When contacted, MyHR stated that Plaintiff Grissom was still classified as seasonal and ineligible for coverage, with no record of the permanent hire offer.

298.    MyHR advised that a return-to-work note without reasonable accommodations would be required to reinstate insurance eligibility and that COBRA coverage was available— estimated at approximately $300 per week, which was unaffordable on unpaid leave.

299.    On August 2 and 4, 2024, Plaintiff Grissom received additional return-to-work emails.

300.    On August 5, 2024, Plaintiff Grissom received an email requesting a medical release from the doctor prior to the August 7, 2024 return date.

301.    On August 7, 2024, Plaintiff Grissom's doctor sent a new extension letter through January 13, 2025 given that Defendant was refusing to allow Plaintiff Grissom to have a reasonable accommodation.

302.    On August 15, 2024, the neurologist provided a progress report stating Plaintiff Grissom was still unable to work without a reasonable accommodation, and recommended continued leave until January 13, 2025.

303.    On August 17, 2024, the leave extension was approved through January 13, 2025, and Plaintiff Grissom was instructed to return to work on the first scheduled day following that date.

304.    Months later, Plaintiff Grissom discovered that the A to Z App displayed a return-to-work date of January 13, 2025, even though the doctor had never provided medical clearance or authorization to return.

305.    On January 17, 2025, Plaintiff Grissom returned to work on the first scheduled day after January 13, 2025, due to concerns about job loss.

306.    Upon arrival, Plaintiff Grissom's badge did not work, but security permitted entry.

307.    Onsite HR expressed uncertainty about employment status, citing the phase-

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

out of seasonal workers.

308.   Plaintiff Grissom explained that no termination notice had been received and that a contingent permanent job offer had been accepted months prior.

309.   Cole, present at the time, confirmed recalling Plaintiff Grissom's name on the permanent hire list.

310.   Plaintiff Grissom was told retraining was required and to return the following night.

311.   On January 18–20, 2025, Plaintiff Grissom was retrained on January 18 and resumed regular duties on January 19 and 20.

312.   No additional medical documentation was requested, and no reasonable accommodations were offered.

313.   Plaintiff Grissom received repeated scanner messages to work faster during both nights.

314.   After discussing this with the manager on January 20 and explaining the recent medical leave due to seizures, the manager stated that the messages were automated.

315.   Following this conversation, the messages ceased.

316.   On January 22, 2025, Plaintiff Grissom received an "end of assignment" email two days after complaining about the scanner messages. The link to the termination letter was invalid, and Plaintiff Grissom's A to Z App account switched to Alumni status, removing access to HR communications and documents.

317.   In late January 2025, Plaintiff Grissom contacted MyHR regarding the

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

termination and permanent job offer but was given no answers.

318.     Plaintiff Grissom also reported not receiving full pay for the week worked, which was eventually issued at the end of January after multiple calls, messages, and threats of legal action.

319.     The actual termination date was January 22, 2025.

320.     On May 25, 2025, Plaintiff Grissom unexpectedly received a "Welcome to Your New Work Family" email from Defendant, more than four months after termination.

321.     Upon checking Defendant's job portal, Plaintiff Grissom found two completed permanent hire applications listed as "First Day" status, each with the original $17 per hour base pay.

322.     Plaintiff Grissom never received any communication regarding start dates or schedules for these applications, which appeared to have been processed during medical leave.

323.     In June 2025, Plaintiff Grissom called MyHR and received a document described as a termination letter, which appeared instead to be proof of employment with no stated reason for termination.

324.     MyHR instructed Plaintiff Grissom to contact onsite HR for further details.

325.     On June 24, 2025, Plaintiff Grissom went to the DAL2 facility.

326.     Plaintiff Grissom was not allowed beyond the entrance and spoke with Christian (last name unknown) from onsite HR through a small security window amid loud air conditioning noise.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

327.    Christian repeatedly stated that the contingent job offer was not a real offer and mocked whether the medical leave was "approved or contingently approved."

328.    He confirmed that onsite HR could not contact inactive employees on medical leave unless the employee initiated contact, and that no phone or email contact was available—employees were directed to MyHR for all leave and reasonable accommodation issues.

329.    Christian further stated that employees must still go through MyHR for any reasonable accommodations, even though onsite HR might know what reasonable accommodations are physically possible.

330.    The only way for inactive employees on medical leave to reach onsite HR directly is to appear in person; there is no published phone number or email for contact. Employees are not informed of this and are instead instructed to manage all reasonable accommodation matters through MyHR and the AtoZ app.

331.    Through subsequent research, Plaintiff Grissom discovered that Defendant's third-party HR system, MyHR, uses an automated process to approve or deny medical reasonable accommodations and that several other employees have reported similar issues.

### I.   Plaintiff Hodnefield – Second Sub-Class

332.    Plaintiff Hodnefield has been employed by Defendant since September 11, 2017.

333.    Through a series of promotions and outstanding employment, Plaintiff Hodnefield has been promoted to Software Development Engineer II.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

334.   Plaintiff Hodnefield worked remotely during the COVID-19 Pandemic.

335.   On October 22, 2024, Plaintiff Hodnefield first opened a reasonable accommodations request to address his disability of Generalized Anxiety Disorder (GAD).

336.   Plaintiff Hodnefield's GAD inhibits his ability to focus, particularly in crowded or noisy environments, such as his in office reporting site.

337.   Plaintiff Hodnefield requested a WFH reasonable accommodation to manage the disability.

338.   Plaintiff Hodnefield provided medical documentation from a therapist indicating the need for such a reasonable accommodation.

339.   On October 23, 2024, Amazon's DLS department sent Plaintiff Hodnefield an automated email confirming receipt of the request and indicating that it was being processed.

340.   On, November 5, 2024, DLS emailed Plaintiff Hodnefield, reiterating that the request was being reviewed and provided documentation about medical reasonable accommodations.

341.   Plaintiff Hodnefield responded, asking for a timeline on a decision.

342.   DLS replied, stating there was no timeline.

343.   DLS informed Plaintiff Hodnefield that it was permissible to begin working from home as if the reasonable accommodation had been approved while it was still under adjudication.

344.   On November 21, 2024, DLS emailed Plaintiff Hodnefield to ask additional questions about the request.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

345. Plaintiff Hodnefield responded with answers to those questions based on his therapist and medical provider's assessments and recommendations.

346. On December 5, 2024, DLS emailed Plaintiff Hodnefield stating that the reasonable accommodation request was 'approved.' The approved reasonable accommodations were a private office (contingent upon availability), low traffic work area, noise-cancelling headphones, additional breaks, and intermittent leave of absence.

347. That same day, Plaintiff Hodnefield corresponded via Slack with a DLS case manager, providing a written explanation as to why the offered reasonable accommodations did not meet the stated needs.

348. The next day, Plaintiff Hodnefield emailed DLS summarizing the conversation from both email and Slack.

349. DLS did not respond.

350. The next month, Plaintiff Hodnefield's manager stated that his manager above him required all employees with pending reasonable accommodation requests to begin working from the office, regardless of prior DLS instructions.

351. Plaintiff Hodnefield's company email automatically deleted the earlier message from DLS stating that working remotely was permitted during adjudication, leaving Plaintiff Hodnefield unable to refute the new directive.

352. On January 16, 2025, DLS emailed Plaintiff Hodnefield to check on how the reasonable accommodations were working but did not acknowledge the previous correspondence.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

353.    Plaintiff Hodnefield then escalated the matter to a DLS manager, referencing prior communication. After several exchanges, both parties agreed to a trial period to assess the effectiveness of the provided reasonable accommodations.

354.    Plaintiff Hodnefield tested the reasonable accommodations for approximately two months.

355.    Plaintiff Hodnefield began working in the office five days a week at this time.

356.    Nothing about Plaintiff Hodnefield's job responsibilities were any different because of this change – 90% of Plaintiff Hodnefield's work meetings are held virtually and 100% of his job responsibilities can be performed remotely.

357.    On January 22, 2025, DLS ordered noise-cancelling headphones as part of the reasonable accommodation and shipped them to Plaintiff Hodnefield.

358.    DLS also opened a ticket to request a private office for Plaintiff Hodnefield.

359.    On February 10, 2025, DLS informed Plaintiff Hodnefield that a private office could not be provided and instead offered to relocate the desk to an area they claimed was low-traffic.

360.    Upon inspection, Plaintiff Hodnefield found that the proposed location was effectively identical to the existing workspace and not low-traffic.

361.    On March 14, 2025, Plaintiff Hodnefield emailed DLS with all collected data from the reasonable accommodation trial, documenting how the reasonable accommodations were not meeting medical needs, and formally requested an appeal of the decision.

362.    On March 21, 2025, DLS offered to order a privacy screen for Plaintiff

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

Hodnefield's work location, an option not previously discussed.

363.    Plaintiff Hodnefield declined this offer, as it would not meaningfully alter the workspace.

364.    On March 26, 2025, DLS responded to the data provided by Plaintiff Hodnefield, stating that documented productivity concerns were irrelevant and that in-person collaboration was best for Defendant.

365.    DLS did not address the documented medical concerns regarding the reasonable accommodations' impact on the disability.

366.    Plaintiff Hodnefield reiterated that the needs were not being met.

367.    At about this time, Plaintiff Hodnefield's total compensation decreased to $329,000, down from $357,000.

368.    On April 7, 2025, Plaintiff Hodnefield replied to DLS requesting that only the medical aspects of the reasonable accommodation's impact be addressed, disregarding productivity concerns.

369.    On April 11, 2025, DLS informed Plaintiff Hodnefield that no changes would be made to the reasonable accommodation decision.

370.    On May 1, 2025, Plaintiff Hodnefield obtained updated medical documentation from the therapist, incorporating data collected during the trial period.

371.    The documentation described how the provided reasonable accommodations failed to improve the condition and, in fact, worsened it.

372.    The documentation explicitly stated that working remotely was the medically

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1    appropriate reasonable accommodation.

2    373.    This was then sent to Defendant, but no response was generated.

3    374.    On May 22, 2025, Plaintiff Hodnefield emailed DLS requesting an update on

4    the reasonable accommodation.

5    375.    The next day, DLS acknowledged the message and stated that an update would

6    be provided once available.

7    376.    On June 23, 2025, DLS emailed Plaintiff Hodnefield, stating that the

8    reasonable accommodation decision made on December 5, 2024, was final.

9    377.    DLS instructed Plaintiff Hodnefield to either accept or decline the offered

10    reasonable accommodations by June 25, 2025.

11    378.    On June 24, 2025, Plaintiff Hodnefield responded to DLS requesting an

12    appeal, reiterating that the needs were not being met and citing the therapist's guidance and a

13    history of successful remote work performance.

14    379.    Plaintiff Hodnefield's manager also replied to DLS, affirming that Plaintiff

15    Hodnefield had been an effective team member both individually and as a mentor.

16    380.    DLS did not respond to these messages.

17    381.    On July 2, 2025, DLS emailed Plaintiff Hodnefield, stating that a "Preferential

18    Denial" of the reasonable accommodation had been chosen and that the case would be closed.

19    The message read:

20    382.    "I'm writing to confirm that you have chosen to decline the reasonable

21    accommodations approved for you. I have updated your case status as: Preferential Denial. I

22    CLASS ACTIONSECOND AMENDED COMPLAINT

    2:25-cv-00050-JHC

23

24

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1    will now close your case and the temporary approval you had to work remotely while this

2    decision was pending is no longer valid. You will now need to meet in-office expectations."

3        383.    Plaintiff Hodnefield responded, clarifying that the reasonable accommodation

4    had not been declined and that an appeal had been requested.

5        384.    On July 7, 2025, DLS replied with the following statement: "By not providing

6    a definitive answer of yes or no is an actual declination of the approved reasonable

7    accommodations. All of your documentation has been reviewed that you have provided. You

8    will now need to meet in-office expectations."

9        385.    Plaintiff Hodnefield had already been meeting in-office expectations since

10   January 2025 and continues to do so out of fear of losing his job.

11       386.    The reasonable accommodation case was officially closed despite Plaintiff

12   Hodnefield not being accommodated.

13       387.    Plaintiff Hodnefield has had no further correspondence with DLS since that

14   time.

15       388.    Plaintiff Hodnefield's medical status and disability has worsened as a result of

16   the failure to accommodate.

17       389.    Defendant did not meaningfully respond to Plaintiff Hodnefield's submitted

18   medical information or analysis of proposed reasonable accommodations.

19       390.    Defendant refused to consider alternative reasonable accommodations for

20   Plaintiff Hodnefield.

21

22   CLASS ACTIONSECOND AMENDED COMPLAINT                    HARMAN GREEN PC
                                                            824 Exposition Ave., Suite 8
23   2:25-cv-00050-JHC                                        Dallas, Texas 75226

24

1

### *J.   Plaintiff Holland – Second Sub-Class*

2      391.    On March 9, 2020 Plaintiff Holland was hired as a full-time, salaried employee

3 as a 3rd Party Security Analyst, L4.

4      392.    On March 12, 2020, Plaintiff Holland began fully remote work.

5      393.    On November 28, 2020, Plaintiff Holland received a merit base increase to

6 $90,000.00.

7      394.    On December 30, 2020, Plaintiff Holland was promoted and received a job

8 code change to Risk Management II, L5

9      395.    On October 16, 2021, Plaintiff Holland received a merit increase to

10 $110,000.00.

11      396.    On October 29, 2022, Plaintiff Holland received a merit increase to

12 $113,300.00.

13      397.    On July 8, 2023, Plaintiff Holland received a merit increase to $117,900.00.

14      398.    On April 13, 2024, Plaintiff Holland received a merit increase to $121,500.00.

15      399.    On January 1, 2025, Plaintiff's Projected Total Compensation was $160,092.

16      400.    Stated differently, Plaintiff Holland has been, for many years, and still is

17 qualified for her role as evidence by her continued strong performance.

18      401.    On June 24, 2025, Plaintiff Holland received official notification of the

19 employer's RTO mandate, effective September 8, 2025.

20      402.    Prior to this, Plaintiff Holland had been working completely remotely, and it

21 was not an essential job function to work in an office or on site anywhere.

22 CLASS ACTIONSECOND AMENDED COMPLAINT

2:25-cv-00050-JHC

23

24

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

403.    On July 2, 2025, Plaintiff Holland submitted a reasonable accommodation request with medical documentation disclosing her disability, along with a hybrid work schedule recommendation (80% remote, 20% in-office) completed by a healthcare provider (see attachment).

404.    On July 22, 2025, Plaintiff Holland held a virtual meeting with an HR representative.

405.    Plaintiff Holland was informed that, pursuant to Amazon's corporatewide, non-regional policies, no appeal process was offered, and that the employer was not issuing remote work reasonable accommodations, citing a company-wide push for RTO.

406.    Concerns and suggested strategies to support medical needs were discussed.

407.    Plaintiff Holland received a denial notice and the following alternative reasonable accommodations to be accepted by July 31, 2025, or they would be forfeited, including participation in a wellness coaching program, noise-canceling headphones, an assigned desk in a low-traffic area, and a phased ramp-up to full-time in-office work over five months.

408.    On July 28, 2025, Plaintiff Holland sent an email requesting the reason for denial and clarity on remote work exceptions versus ADA reasonable accommodation suitability.

409.    On July 30, 2025, Plaintiff Holland received a response from DLS reminding of the approaching July 31st deadline.

410.    On July 31, 2025, Plaintiff Holland emailed a conditional acceptance to the

CLASS ACTION SECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

alternative reasonable accommodations solely for the purpose of preserving her employment, as no medical provider had approved of, or recommended, the alternative reasonable accommodations.

411.    Plaintiff Holland has not been accommodated to date.

### K.  Plaintiff Ly – Second Sub-Class

412.    Plaintiff Ly is a Senior Product manager for Defendant and has been employed by Defendant for the last six years.

413.    On October 23, 2023, Plaintiff Ly submitted a reasonable accommodation request for partial remote work (three days remote, two in the office).

414.    On November 13, 2023, Defendant approved Plaintiff Ly for full remote (five days) through October 31, 2024.

415.    On November 20, 2024, Plaintiff Ly requested a second reasonable accommodation for partial remote (three days remote, two in the office).

416.    On February 19, 2025, Plaintiff Ly's reasonable accommodation request was "approved" for intermittent remote based on flare-ups.

417.    This was not, however, an actual reasonable accommodation.

418.    The expectation was for Plaintiff Ly to be in the office five days a week for at least four hours a day.

419.    Defendant also assigned Plaintiff Ly a private office.

420.    Remote work based on flare-ups did not align with Plaintiff Ly's diagnosis and needs.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

421.    Plaintiff Ly has ADHD that must be carefully managed to function at a reasonable level without negatively impacting overall well-being.

422.    The reasonable accommodation process was stressful, and it did not appear that the individual assigned to Plaintiff Ly's case was reading or comprehending the responses she provided because that assigned person was not localized.  Defendant's use of a corporatewide, nationalized policy to rely on the A to Z App, and to Return to Office, did not allow meaningful conversations about what reasonable accommodations Plaintiff Ly needed.

423.    Plaintiff Ly was required to repeat information several times, and the assigned representative asked questions already answered in the documentation previously provided by Plaintiff Ly's medical provider.

424.    The process did not feel interactive, but, rather, was simply drawn out in an effort to dissuade Plaintiff Ly from obtaining and utilizing her reasonable accommodation to work remotely, something that Amazon's RTO policy would not allow.

425.    Defendant made Plaintiff Ly feel pressured to accept the offer as presented, and did not meaningfully have a conversation about what reasonable accommodations were possible.

426.    It was not an essential function of Plaintiff's job that she report in person, but Defendant refused to offer a full remote work reasonable accommodation.

427.    Defendant imposed a deadline for acceptance, stating that failure to respond by that date would be treated as a rejection.

428.    Defendant did not provide an explanation as to why full remote work was no

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

longer permitted and failed to acknowledge Plaintiff Ly's concerns about how working in the office triggers sensory overstimulation, even when assigned a private office, due to smells and sounds in common areas.

429.    Plaintiff Ly's manager supported the need for her to work remotely.

430.    Plaintiff Ly's annual rating for 2024 was "exceeded expectations" (compared to "meets expectations" in 2023), which Plaintiff Ly believes was due to the fact that the Defendant had allowed work in an environment that accommodated Plaintiff Ly's needs and supported success.

431.    Plaintiff repeatedly submitted a medical reasonable accommodation request to Defendant via the A to Z App only for Defendant to either lose, or completely ignore, that medical information.

432.    In any event, it was clear that Defendant did not rely on that medical information when considering Plaintiff's requests for reasonable accommodation and remote employment.

433.    Plaintiff works at the Day 1 (SEA41) location, in Seattle, WA and currently works five days per week in the office and is required to report in for at least four hours per day.

### L.  Plaintiff Ottenweller – Third Sub-Class

434.    Plaintiff Ottenweller is a man who is disabled, and requires reasonable accommodations in the workplace.

435.    Plaintiff Ottenweller began his employment with Defendant in 2022 as a

1    Picker at a warehouse in Grapevine, Texas.

2        436.    During his employment, Plaintiff Ottenweller was in an abusive domestic

3    relationship.

4        437.    On October 13, 2022, Plaintiff Ottenweller received a letter from his doctor

5    that stated that Plaintiff Ottenweller required a reasonable accommodation.

6        438.    Specifically, the note stated that Plaintiff Ottenweller "will need to be able to

7    wear ear buds at work to listen to music as a coping skill for the symptoms related to his

8    mental illness."

9        439.    Plaintiff Ottenweller was depressed because of his abusive relationship, a

10   relationship where his partner routinely tried to have Plaintiff Ottenweller commit suicide so

11   she could collect on life insurance.

12       440.    Plaintiff Ottenweller asked to be accommodated and was accommodated by

13   Defendant's HR Department.

14       441.    Plaintiff Ottenweller's direct managers, by Alex Ernst and Eric Johnston, were

15   aware of Plaintiff Ottenweller's mental health disability.

16       442.    Plaintiff Ottenweller's direct managers were aware of Plaintiff Ottenweller's

17   reasonable accommodation request to wear ear buds in the workplace.

18       443.    Plaintiff Ottenweller's direct managers harassed Plaintiff Ottenweller because

19   of his disabilities, and routinely made fun of Plaintiff Ottenweller for requiring a reasonable

20   accommodation.

21       444.    Plaintiff Ottenweller's managers created a hostile work environment for two

22   CLASS ACTIONSECOND AMENDED COMPLAINT

23   2:25-cv-00050-JHC

24

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1    years to attempt to get Plaintiff Ottenweller to quit.

2        445.    Managers pointed speakers at Plaintiff Ottenweller, and blared music all day

3    long in an effort to distract him and to harass him.

4        446.    Plaintiff Ottenweller's managers denied and mocked his mental health

5    condition, specifically to make working conditions intolerable for Plaintiff Ottenweller.

6        447.    Plaintiff Ottenweller's managers explicitly told him that they believed he was

7    "making up" his disability.

8        448.    Because Plaintiff Ottenweller was disabled, his managers refused to allow him

9    to attend meetings with coworkers and stifled Plaintiff Ottenweller's ability to seek

10    promotions.

11        449.    These negative and harassing acts were done only to distress Plaintiff

12    Ottenweller as a person with disabilities and approved reasonable accommodations.

13        450.    Plaintiff Ottenweller asked for the harassment to stop, but it never did.

14        451.    Plaintiff Ottenweller became homeless and slept in his car in the parking lot,

15    as do many pickers.

16        452.    Upon information and belief, it was well known that many pickers slept in

17    their cars between shifts.

18        453.    Plaintiff Ottenweller was then hospitalized again, in January 2024, as a result

19    of his disability.

20        454.    Plaintiff Ottenweller was hospitalized after sustaining a broken rib at work.

21        455.    Plaintiff Ottenweller left the workplace the same day that he was injured, and

22    CLASS ACTIONSECOND AMENDED COMPLAINT

23    2:25-cv-00050-JHC

24

had to rely on Defendant's A to Z App to seek time off for the injury.

456.    When he was hospitalized again, Plaintiff Ottenweller was terminated immediately.

457.    Defendant's policy is to have employees submit information after missing a shift as to why that shift was not completed.

458.    Before Plaintiff Ottenweller could submit his information, he was terminated. Plaintiff Ottenweller's termination, then, arose solely out of the failures within Defendant's A to Z App.

### M. Plaintiff Rooker – Third Sub-Class

459.    Plaintiff Rooker is a Senior Investments Manager (L6) at Amazon Web Services.

460.    Plaintiff Rooker has served Amazon for several years in a high-performing, strategic role managing a multi-million-dollar investment program.

461.    Her responsibilities are entirely computer-based and include virtual collaboration with internal stakeholders across geographies.

462.    For the past four years, she has successfully performed her role remotely, receiving positive reviews and no record of discipline or performance concerns.

463.    In February 2024, Plaintiff Rooker sustained serious injuries in a car accident resulting in three herniated discs and an annular fissure in her cervical spine.

464.    These injuries have caused chronic, disabling pain and significantly limit her mobility, including her ability to sit, lift, or drive safely.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

465.    Her physicians have repeatedly supported her need to work remotely as a medically necessary reasonable accommodation, and, as well, her physicians have made clear to Defendant that Plaintiff Rooker should be afforded a reasonable accommodation to work remotely.

466.    After successfully working remotely for several months post-injury, Plaintiff Rooker went on short-term disability leave in October 2024 due to a worsening of her condition.

467.    She returned to work in April 2025 and submitted an updated disability reasonable accommodation request to continue working remotely.

468.    Despite medical documentation substantiating the need for a reasonable accommodation, her request was denied in June 2025.

469.    When she requested to appeal, she was informed there was no appeal process available pursuant to Defendant's RTO policy which will not allow employees to work remotely.

470.    Instead of engaging in a meaningful interactive process, Defendant offered a rolling backpack as a proposed reasonable accommodation.

471.    This measure does not address the core limitations involved, and in fact poses additional risk of reinjury by requiring her to twist, pull, and lift—all medically restricted movements.

472.    Defendant took no further action to accommodate Plaintiff Rooker's well-documented disability, nor to prevent escalation of harm.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

473.    In fact, Plaintiff Rooker raised a formal legal complaint on June 30, 2025.

474.    Defendant retained David Stein, Shareholder, Greenberg Traurig, LLP and Conor Higgins, Associate, Greenberg Traurig, LLP to respond to Plaintiff Rooker's complaint of not being accommodated. Mr. Stein and Mr. Higgins identified themselves on July 6, 2025.

475.    It was not, however, until September 2, 2025 did those two lawyers have the ability to respond to Plaintiff's complaint of not being accommodated.

476.    When a response was generated, Defendant blamed Plaintiff Rooker for not engaging in the interactive process (which is incorrect) and only offered additional faux reasonable accommodations in the form of a "Private Office Space sufficient to perform physical therapy exercise/stretching" and a "standing desk."

477.    Even with lawyers present, Defendant is completely incapable of meaningfully engaging in the interactive process, even when a Plaintiff states that they put their life at risk by traveling to the workplace.

478.    Plaintiff Rooker remained ready and able to perform the essential functions of her position with reasonable accommodation, but was constructively terminated because of the failure to provide her a reasonable accommodation.

479.    A return to in-office work would have directly endanger her health and contradict the advice of her treating physicians.

480.    Plaintiff Rooker's inability to comply with the return-to-office mandate was the result of medical necessity—not noncompliance.

481.    Further, Defendant would have derived no benefit from Plaintiff Rooker's

1    return to the office.

2        482.    Defendant's harassing mandate to return to the office is solely designed to

3    push out and harm employees with disabilities.

4        483.    Before her constructive termination, Plaintiff Rooker disclosed resources for

5    disabled employees to rely on if they feel their rights had been violated.

6        484.    Those messages in Defendant's Slack channels were deleted.

7        485.    Upon information and belief, Defendant maintains a policy to shield its illegal

8    conduct, and hide its discrimination against disabled employees, by preventing employees

9    from notifying others about their rights under the law.

10    Long time lurker-first time poster. Tomorrow will be my last day at Amazon. RTH being the main factor, but another being unsure how recruiter will look in Amazon in the near future as far as how many recruiters they will actually need with the advance of AI. I started out in 2019 hiring for the warehouse and since 2021 I have been virtual. But I have been asked to relocate which I did not want to do.

11   This channel has been a great source of information, collaboration, and just a sense of feeling that you are not alone in the journey.
     Although my next role will be in-office, i will be less than a 25 minute drive from home

12   (As a side note as a recruiter,  I do feel bad for anyone who put there trust in recruiting when we gave you an offer that you were going to be remote only to have those terms changed by Amazon. Recruiters can only go by what the business tells us, we did not initially set out to hurt you.)

13   Thank you everyone, keep fighting the good fight!

      4   😀

14   Amy Rooker  5:34 PM
     **This message constitutes protected activity under the National Labor Relations Act.**
     disabledemployeesunited.org

486.     speakup@disabledemployeesunited.org

15   _____

16    Long time lurker-first time poster. Tomorrow will be my last day at Amazon. RTH being the main factor, but another being unsure how recruiter will look in Amazon in the near future as far as how many recruiters they will actually need with the advance of AI.  I started out in 2019 hiring for the warehouse and since 2021 I have been virtual. But I have been asked to relocate which I did not want to do.

17   This channel has been a great source of information, collaboration, and just a sense of feeling that you are not alone in the journey.
     Although my next role will be in-office, i will be less than a 25 minute drive from home

     (As a side note as a recruiter,  I do feel bad for anyone who put there trust in recruiting when we gave you an offer that you were going to be remote only to have those terms changed by Amazon. Recruiters can only go by what the business tells us, we did not initially set out to hurt you.)

18   Thank you everyone, keep fighting the good fight!

     😀 13   😀

19   ☺ This message was removed.

487.     _____

20       488.    Defendant is not only engaged in a policy of disability discrimination with a

21

22   ~~CLASS ACTION~~SECOND AMENDED COMPLAINT          HARMAN GREEN PC
     2:25-cv-00050-JHC                                 824 Exposition Ave., Suite 8
                                                       Dallas, Texas 75226
23

24

return to work mandate that targets people with disabilities, but actively takes measures to prevent employees from notifying others of their right to be free from discrimination.

**Class allegations**

489.    Upon information and belief, Defendant employs 1.5 million of people across the United States.  If even one percent of them are disabled, that would make 150,000 Amazon employees disabled.

490.    Employees utilize the A to Z App to process things like time off, disability reasonable accommodation requests, and other human resources functions.

491.    This First Sub-Class encompasses all employees have sought an a reasonable accommodation request through the A to Z App.

492.    Like Plaintiff Plaintiffs Cook, Burdi, and Grissom, Class Members who submit an a reasonable accommodation are routinely treated as an afterthought and are forgotten about.

493.    Defendant's decentralized human resources model does not allow for appropriate conversations about the Class Member's disabilities.

494.    Defendant's website identifies a team of "Accommodation Reasonable accommodation Consultants" who provide "reasonable accommodation support to our associates."

495.    These Accommodation Reasonable accommodation Consultants rarely, if ever, maintain current or reliable files on employees, evidence by Plaintiff having to constantly resubmit medical forms that had already been provided.

CLASS ACTION SECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

496.    The A to Z App does not use regional or localized human resources employees to communicate with disabled employees, nor do employee's regional or localized managers or job functions make any impact on the ability to communicate with them about their reasonable accommodations.

497.    This process is inherently illegal in that it breaks down the interactive process at the 'app stage' and such a breakdown is traceable to the employer.

498.    This class is sufficient under Federal Rule of Civil Procedure Rule 23 as it is numerous, certainly over 40 employees and, potentially, in excess of 10,000 employees.

499.    ThereWith respect to the First Sub-Class, there are common questions of fact and law, particularly whether Defendant's A to Z app conforms with the duty to engage the interactive process and the duty to provide reasonable accommodations when there is an absence of a significant financial burden.

500.    The Second Sub-Class is also appropriate as a class, as there are common questions of fact and law, particularly whether the RTO policy is inherently discriminatory against employees who require a reasonable accommodation to perform work remotely.

501.    The Third Sub-Class is also an appropriate class as there common questions of fact and law as to whether Defendant's policy of placing individuals, particularly those who work in warehouses, on a short term disability leave, rather than accommodate them, is discriminatory.

502.    The claims or defenses of the representative parties are typical of the claims or defenses of the class.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

13.503.~~Plaintiff~~Plaintiffs hereby ~~reserves~~reserve the right to amend or modify the class definitions pursuant to Fed. R. of Civ. Pro. 15 as necessary.

14.504.Numerosity. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to ~~Plaintiff~~Plaintiffs at this time, based on information and belief, the Class consists of thousands of persons, or more, who have requested reasonable accommodations and who have not been given appropriate attention.  Other such claims have been filed, evidencing that this practice is widespread and ongoing for many years, *see e.g. Bishop v. Amazon.com Inc.*, No. 3:22-cv-508, (N.D.T.X. 2023).

15.505.Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members.  At ~~it's~~its core, the Class has a common question of law about whether the A to Z App can lead to conversations that can satisfy the employer's requirement to engage in the interactive process.  As well, the Class has a common question of law about whether the RTO policy is discriminatory on its face and as it is applied.  Finally, the Class has a common question of law about whether the LOA policy is discriminatory in practice.

16.506.Typicality. ~~Plaintiff's~~Plaintiffs' claims are typical of those of other Class Members because ~~Plaintiff was~~Plaintiffs were denied reasonable accommodations because of failure to appropriately handle medical information in the A to Z App, based on the RTO policy, and by forced LOA.

17.507.Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. ~~Plaintiff'~~Plaintiffs' Counsel are competent and experienced in litigating Class actions.

18.508.Predominance. Defendant has engaged in a common course of conduct toward ~~Plaintiff~~Plaintiffs and Class Members, in that all the ~~Plaintiff~~Plaintiffs and Class Members must

~~CLASS ACTION~~SECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

seek reasonable accommodations through the same process, the A to Z App, which is an utter failure and rife with discriminatory animus. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

19.509.Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

20.510.This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(3). This case is also maintainable as a class action under Fed. R. Civ. P. 23(b)(2).  Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

21.511.Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses through their employment and their use of the A to Z App.

## **CAUSES OF ACTION**

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

## FIRST CLAIM

**Disability Discrimination via Disparate Impact, in violation of the Americans with Disabilities Act and the Washington Law Against Discrimination**

22.512.Plaintiff, on behalf of herself, and all Class Members, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 83511 with the same force as though separately alleged herein.

23.513.The Americans with Disabilities Act prevents discrimination in the workplace against persons with disabilities.

514.    The Washington Law Against Discrimination (WLAD) prohibits unfair practices by employers such as discriminating against employees with disabilities, and generally provides stronger protections for employees than standards set out under the Americans with Disabilities Act.

24.515.The Americans with Disabilities Act prevents both overt discrimination, such as harassing statements, but also disparate impact, discrimination that occurs despite intent.

25.516.The Americans with Disabilities Act requires that employers such as Defendant engage in the interactive process if an employee indicates that they are disabled.

26.517.Failing to engage in the interactive process is discrimination, whether intentional or not.

27.518.Simply turning a blind eye to disabled employees seeking reasonable accommodations is illegal as a form of disability discrimination.

28.519.As well, creating a system that is designed to fail, or inherently fails, such as Defendant's A to Z App, has a disparate impact on disabled employees.

29.520.Plaintiff isPlaintiffs are disabled.

30.521.PlaintiffPlaintiffs made known to Defendant that she wasthey were disabled.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

31.522.Defendant did nothing because it forced Plaintiff to rely on the A to Z App, which is Defendant's policy when an employee seeks ana reasonable accommodation, and that App cannot be used reliably.

32.523.Specifically, Defendant mandated that Plaintiff (and all Class Members) utilize a faulty app to compile all disability reasonable accommodation requests.

33.524.The A to Z App is a graveyard of unheard reasonable accommodation requests.

34.525.Rather than take a localized approach where Human Resources representatives and managers work together to accommodate an employee, Defendant relies on the A to Z App, where employees are not given personalized attention, and where employees are constantly reassigned to new case managers without explanation.

35.526.PlaintiffPlaintiffs repeatedly made known, both formally and informally, that she wasthey were disabled, and Defendant did not engage in a good faith interactive process to understand what, if any, reasonable accommodation PlaintiffPlaintiffs needed.

36.527.Plaintiff wasPlaintiffs were forced into a cycle of never being able to actually communicate with any person about hertheir disability reasonable accommodation needs in a meaningful way.

37.528.Plaintiff challengesPlaintiffs challenge, on behalf of herselfthemselves and all Class Members, a company-wide practice and policy, of relying on the A to Z App that affects all employees who seek some form of a disability reasonable accommodation.

38.529.Whether intentionally or unintentionally, Defendant's appA to Z App was designed to fail; employees simply cannot seek reasonable accommodations in a timely or reliable manner, often leading to exacerbation of disabilities, injuries at the workplace, or termination of employment.

39.530.Plaintiff'sPlaintiffs' claims are one and the same as the Class Members in the First

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

Sub-Class.

531.    As well, Plaintiffs and Class Members in the Second Sub-Class allege disability discrimination arising out of the RTO policy.

532.    The RTO policy, by design, is inherently discriminatory in that it provides for a corporatewide, non-regionalized policy that denies use of a particular reasonable accommodation.

533.    The RTO policy is no different than a 'no wheelchairs in the office' policy.

534.    The Plaintiffs and Class Members in the Third Sub-Class allege disability discrimination by way of a corporatewide, non-regional policy of pushing employees, in particular warehouse workers, into a forced leave, often relying on Defendant's Short-Term Disability leave program, rather than accommodate them.

535.    All three Sub-Classes, and all Plaintiffs and Class Members, have claims stemming from the disability discrimination, and can show that Defendant maintains policies and practices that discriminate through disparate impact.

40.536.As such, Defendant intentionally and willfully violated PlaintiffPlaintiffs and the Class Member's rights to engage in the interactive process, and owes PlaintiffPlaintiffs and all Class Members all front pay, back pay, emotional distress damages, punitive damages as the failure to engage in the interactive process was malicious and inexcusable, attorney fees, costs, expenses, and any and all other remedies this Court deems just and proper.

537.    As such, Defendant intentionally and willfully discriminated against Plaintiffs and the Class Member's based on their status as disabled, and owes Plaintiffs and all Class Members all front pay, back pay, emotional distress damages, punitive damages as discrimination was malicious and inexcusable, attorney fees, costs, expenses, and any and all other remedies this Court deems just and proper

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

41.538.In any event, should the Court find that it cannot award monetary damages to each and every Class Member, Plaintiff seeks for the Class Members, at a minimum, that the Class Members be awarded a declaratory judgment stating the Defendants have violated the Americans with Disabilities Act by allowing disability discrimination via disparate impact.

## SECOND CLAIM

**Failure to provide reasonable accommodations as required by the Americans with Disabilities Act and the Washington Law Against Discrimination**

42.539.PlaintiffPlaintiffs, on behalf of herselfthemselves, and all Class Members, hereby reallegesrealleges and incorporatesincorporate each and every allegation contained in paragraphs 1 through 81539 with the same force as though separately alleged herein.

43.540.The Americans with Disabilities Act requires that employers such as Defendant provide a reasonable accommodation to an employee if an employee indicates that they are disabled and require such ana reasonable accommodation.

541.    Plaintiff isThe Washington Law Against Discrimination (WLAD) prohibits unfair practices by employers such as discriminating against employees with disabilities, and generally provides stronger protections for employees than the standards set out under the Americans with Disabilities Act.

44.542.Plaintiffs are disabled.

45.543.Plaintiff made known to Defendant that she wasthey are disabled.

46.544.Despite knowing of Plaintiff's disabilityPlaintiffs' disabilities, and despite knowing that PlaintiffPlaintiffs required ana reasonable accommodation, Defendant failed to provide any reasonable accommodation.

47.545.PlaintiffPlaintiffs sought ana reasonable accommodation in the form of remote work.

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

48.546.Despite this, Defendant did absolutely nothing to ascertain what, if any, reasonable accommodation Plaintiff needed.

49.547.Plaintiff'sPlaintiffs' doctor's provided notes explicitly stating that shethey should be accommodated.  Plaintiff Cook's provider, as well as Plaintiff Corriere's, explicitly stated that they should be working remotely and not denied the opportunity to work, as that would exacerbate herthe disabilities.

50.548.Defendant simply ignored these doctorsdoctors' notes and placed Plaintiff Plaintiffs Cook and Corriere on a leave to keep herthem 'out of sight, out of mind.'

549.    The same occurred to Plaintiff Grissom when she sought accommodations and was subject to the LOA policy.

51.550.Defendant failed to have a two-way conversation with PlaintiffPlaintiffs about Plaintiff's disability.Plaintiffs' disabilities.

52.551.Defendant's leave to Plaintiff wasLOA is not ana reasonable accommodation, it wasis a punishment and was detrimental to her health.

53.552.AccommodationsReasonable accommodations are meant to support an employee to fulfill their duties without burdenburdens stemming from their disabilities, not keep them out of the workplace for a year.

54.553.Preventing an employee from working for many months is not ana reasonable accommodation, it is a termination in disguise.[4]

---

[4] *See e.g.*, New York State Division of Human Rights, NYS DIVISION OF HUMAN RIGHTS ALLEGES PREGNANCY AND DISABILITY DISCRIMINATION AT AMAZON WORKSITES, https://www.governor.ny.gov/news/governor-hochul-announces-complaint-filed-against-amazon#

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

55.554.Plaintiff's Plaintiffs' claims are one in the same as the Class Members.

56.555.As such, Defendant intentionally and willfully violated Plaintiff and the Class Members's Members' rights to an a reasonable accommodation, and owes Plaintiff Plaintiffs and the Class Members all front pay, back pay, emotional distress damages, punitive damages as the failure to engage in the interactive process was malicious and inexcusable, attorney fees, costs, expenses, and any and all other remedies this Court deems just and proper.

556.    In any event, should the Court find that it cannot award monetary damages to each and every Class Member, Plaintiffs seek for the Class Members, at a minimum, that the Class Members be awarded a declaratory judgment stating the Defendants have violated the Americans with Disabilities Act by allowing disability discrimination via disparate impact .

**THIRD CLAIM**

**Constructive Termination in violation of the Americans with Disabilities Act and the Washington Law Against Discrimination**

557.    Plaintiffs, on behalf of themselves, and all Class Members, hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 557 with the same force as though separately alleged herein.

558.    The Americans with Disabilities Act requires that employers such as Defendant provide a reasonable accommodation to an employee if an employee indicates that they are disabled and require such a reasonable accommodation.

559.    The Washington Law Against Discrimination (WLAD) prohibits unfair practices by employers such as discriminating against employees with disabilities, and generally provides stronger protections for employees than the standards set out under the Americans with Disabilities Act.

CLASS ACTION SECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

560.    If an employee requests a reasonable accommodation, and a covered employer does not provide that reasonable accommodation, that employee may be compelled to abandon their employment due to the impact on their safety or negative impact on their emotional state.

561.    Stated differently, employees may be considered 'constructively discharged' if they are not accommodated.

562.    Plaintiffs and Class Members who have been constructively terminated due to the failure to accommodate them allege that corporatewide, non-regional policies ended their employment to no fault of their own.

563.    The First Sub-Class alleges that Class Members were constructively terminated because the corporatewide policy to rely on the A to Z App prevented reasonable accommodations in a timely manner leading directly to Class Members' terminations.

564.    The Second Sub-Class alleges that Class Members were constructive terminated because the RTO policy is a corporatewide policy without any flexibility for a reasonable accommodation to work remotely.

565.    The Third Sub-Class alleges that Class Members were constructively terminated because the corporatewide policy simply pushes employees onto disability leaves that they do not intend to take, and prohibits employees from continuing meaningful employment.

566.    Plaintiffs and all Class Members who were constructively terminated all front pay, back pay, emotional distress damages, punitive damages as the failure to engage in the

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

1     interactive process was malicious and inexcusable, attorney fees, costs, expenses, and any and

2     all other remedies this Court deems just and proper.

3          57.567. In any event, should the Court find that it cannot award monetary damages to

4     each and every Class Member, Plaintiff seeks for the Class Members, at a minimum, that the

5     Class Members be awarded a declaratory judgment stating the Defendants have violated the

6     Americans with Disabilities Act by allowing disability discrimination via disparate impact.

7

8                                    **PRAYER FOR RELIEF**

9          WHEREFORE, Plaintiff pray for judgment as follows:

10         A.     For an Order certifying this action as a class action and appointing

11    PlaintiffPlaintiffs and their counsel to represent the Class;

12         B.     For equitable relief enjoining Defendant from engaging in the wrongful conduct

13    complained of herein pertaining to the First Sub-Class and the failure to engage the interactive

14    process to determine what, if any, reasonable accommodation an employee may need.  Relief

15    sought may be ascertained by the closure or significant modification of the A to Z App, this will

16    then require Amazon to take a more localized approach to reasonable accommodation requests,

17    which will benefit disabled employees;

18         C.     For equitable relief enjoining Defendant from engaging in the wrongful conduct

19    complained of herein pertaining to the Second Sub-Class and the RTO corporatewide policy that

20    prohibits employees from remote employment. Relief sought may be ascertained by denial of an

21    inflexible RTO policy that does not accommodate employees seeking remote employment;

22         D.     For equitable relief enjoining Defendant from engaging in the wrongful conduct

23    complained of herein pertaining to the Third Sub-Class and forcing Class Members to take forced

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

leaves of absence rather than continue their employment with reasonable accommodations. Relief may be ascertained by creating a more localized reasonable accommodation system that allows for reasonable accommodations to be granted in a timely fashion;

       C.E.    For declaratory relief as requested;

       D.F.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

       E.G.    For an award of punitive damages, as allowable by law;

       H.    Plaintiffs, and the Class Members, seek an award of at least $2,000,000,000 in penalties and compensatory damages based on the rampant disability discrimination.

       F.I.    For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

       G.J.    Pre- and post-judgment interest on any amounts awarded; and

       H.K.    Such other and further relief as this Court may deem just and proper.

       DATED this 25th20th day of MarchOctober 2025.

**FRANK FREED SUBIT & THOMAS LLP**

By: /s/ Michael C. Subit
Michael C. Subit, WSBA #29189
705 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206.624682.6711

msubit@frankfreed.com

*Local Counsel for Plaintiff*

**MASON LLP**

**HARMAN GREEN PC**

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226

By: /s/ Evan Richardson
Walker G. Harman, Jr.*
Evan K. Richardson*
HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226
NY Bar 6009112
TX Bar 24138559
erichardson@theharmanfirm.com
wharman@theharmanfirm.com
*Attorneys for Plaintiffs*

*pro hac vice applications granted.*

CLASS ACTIONSECOND AMENDED COMPLAINT
2:25-cv-00050-JHC

HARMAN GREEN PC
824 Exposition Ave., Suite 8
Dallas, Texas 75226